### Skidmore v. Harris.

(Decided March 6, 1914.)

### Appeal from Harlan Circuit Court.

1. Action—Abatement—Prejudicial Error.—Where an action in behalf of an infant lunatic is improperly brought by his mother as next friend, the refusal of the trial court to abate the action is not prejudicial error where during the pendency of the action

the lunatic dies and the mother is thereafter permitted to file an amended petition and prosecute the action in her name as heir of the infant lunatic.

2. Judgment—Propriety of—Evidence.—In determining the propriety of a judgment, this court will consider only such evidence as is competent.

3. Land—Action to Recover—Fraud—Evidence.—In an action to recover land on the ground of fraud, evidence considered, and held to support a finding of fraud.

4. Marriage—Legitimacy of Children—Proof of.—In an action where the marriage of plaintiff and the legitimacy of her children are in issue, the fact that she and her alleged husband lived together as man and wife and enjoyed the reputation of being married, that there was a judgment of divorce introduced by defendant himself, and the defendant and others recognized the children as legitimate, is sufficient in the absence of evidence to the contrary, to create the presumption of marriage and establish the legitimacy of the children.

5. Land—Recovery—Execution of Deed by Commissioner—When Prejudicial—Where plaintiff recovers certain land, the fact that the commissioner, on behalf of the defendant, executes to her a deed without giving defendant an opportunity to do so, affords no ground for reversal.

CLAY & CARTER for appellant.

HALL & BOWLING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On January 15, 1910, appellee, Jane Harris, as next friend of her infant son, Lloyd Skidmore, a lunatic, brought this action against appellant, John Skidmore, and Peggy Blanton, to recover a certain tract of land located in Harlan County, Kentucky. The petition alleges in substance that Jane Harris was married to Everett Skidmore. Two children were born to them, Nancy Skidmore and Lloyd Skidmore. Several years prior to his death Everett Skidmore purchased from Peggy Blanton the land described in the petition. About seven years after the conveyance was executed, Everett Skidmore died intestate. John Skidmore was appointed and qualified as his administrator. The conveyance from Peggy Blanton to Everett Skidmore came into the possession of John Skidmore. This conveyance was never recorded. Subsequently John Skidmore fraudulently procured from Peggy Blanton a conveyance of the land without paying any consideration therefor. After the death of Everett Skidmore Nancy Skidmore, one of the children

died. Alleging that appellant, John Skidmore, by virtue of his fraudulent conduct, was not the owner of the land in controversy, but held it in trust for Everett Skidmore's children, and that she, upon the death of Nancy Skidmore, became entitled to an undivided one-half interest in the land, and that her son, Lloyd Skidmore, was the owner of the other undivided half interest therein, plaintiff asked judgment for the land in question. Subsequently an amended petition was filed alleging that upon the death of Nancy Skidmore the entire title to the tract in controversy vested in Lloyd Skidmore, and Jane Harris had no interest therein. Thereafter John Skidmore filed an answer denying in the first paragraph the material allegations of the petition and amended petition, and alleging in the second paragraph that on October 30, 1907, Lloyd Skidmore was, by judgment of the Harlan Circuit Court, adjudged to be an idiot, and thereafter Margie Noe was duly appointed his committee, and pleading this fact in bar of plaintiff's right to prosecute the action as next friend. To this latter plea a demurrer was filed and sustained. On January 10, 1911, the death of Lloyd Skidmore was suggested of record. On the same day the action was revived in the name of Jane Harris. Thereupon she filed an amended petition pleading the death of Lloyd Skidmore, and alleging that he died unmarried and without issue, and that she was his sole heir and entitled to recover the land in controversy. Later John Skidmore filed his separate answer denying each and every allegation of the petition as amended, and pleading that he was the owner and entitled to the possession of the land. Subsequently appellee, Jane Harris, filed another amended petition, alleging that she was the equitable owner of the land described in the petition, in the way and manner alleged in her petition as previously amended; that she might be mistaken in regard to the fact that Everett Skidmore had received a deed from Peggy Blanton to the land, but that Charles Blanton and Peggy Blanton executed and delivered to the said Everett Skidmore either a deed of conveyance or a title bond to the land; that John Skidmore took the deed from Peggy Blanton knowing that this deed or title bond had been executed to Everett Skidmore, and did this for the purpose of defrauding her and her children out of the land. This pleading was traversed of record.

On final hearing the chancellor gave judgment in favor of appellee. John Skidmore appeals.

The evidence for plaintiff is to the effect that she and Everett Skidmore were married about 29 years ago in Tennessee. There were born of this marriage Nancy Skidmore and Lloyd Skidmore. She and Everett Skidmore lived together for about six years. She then obtained a divorce from him. With the proceeds of the property received from her family, Everett purchased the land in controversy from Charles Blanton and Peggy Blanton. She had seen the conveyance, and it was either a title bond or a deed to the land. Had heard the conveyance read. It called for the land described in the petition. The names of Peggy Blanton and Charles Blanton were signed at the bottom of the writing. She further testified that Peggy Blanton had said that she had sold the land to Everett Skidmore. John Skidmore was appointed Everett's administrator. John told her that he had the writing. After Everett's death John paid her some hogs and a little money for rent on the land. Daniel Blanton testified that he heard his mother, Peggy Blanton, say that she had sold the land to Everett Skidmore. His mother died about three months before he testified.

John Napier and Green Napier, his son, both testified that they occupied the land in controversy four or five years as tenants of Everett Skidmore, and that John Skidmore knew this fact. They afterwards occupied the land while John Skidmore claimed it and paid rent to him. For a while they rented the land from John Skidmore as administrator of Everett Skidmore, but later on John said he thought he ought to have the land for keeping the children. He then rented it as his own. At that time John never claimed that he bought the land from Charles and Peggy Blanton, but claimed that he should have the land for taking care of the children.

John Skidmore testified that he purchased the land from Peggy Blanton, and paid her $300 for it. He never saw any deed or other writing to his brother Everett for the land, and did not tell Jane Harris that he ever had or saw such writing. He never paid to her any rent on the land, but paid her some hogs and money representing personal property left by Everett Skidmore. He was informed that Everett Skidmore did not have any writing for the land, and had not paid for it. For several years he and his mother took charge of Nancy and Lloyd Skidmore, and cared for them. On cross-examination

witness was asked "How long did you hold this land as administrator for the children of Everett Skidmore?" He answered: "Four or five years." On being asked how he came to think that the land did not belong to them, he replied that Oliver Farmer said that Everett Skidmore did not have any title bond or deed to it. Did not know how Oliver Farmer came to know this fact. On being asked "Why didn't you go and inquire of Peggy Blanton whether he owned the land or not, instead of taking Oliver Farmer's word for it?" he replied: "I don't know." He was also asked the following question: "Did Peggy Blanton claim this land during the five or six years you held it as administrator of the children of Everett Skidmore?" and replied "I don't believe she did." On being asked in whose name he listed the property for taxation during the five or six years he held it as administrator, he replied "In my own name." He was then asked: "Why did you give it in your own name if you were holding it for the children of Everett Skidmore?" He answered: "I don't know." In answer to the question "Did you rent this land while you held it as administrator?" he replied: "Yes, sir." In reply to the question "What did you do with the rents?" he said: "I don't remember."

It was shown by the deposition of the deputy county clerk that Peggy Blanton purchased the land in question on April 16, 1884. It was further shown that plaintiff, Jane Skidmore, filed suit for divorce against Everett Skidmore January 24, 1887. Judgment of divorce was granted April 11, 1887.

Various exceptions to the testimony of Jane Harris and Daniel Blanton were filed, but they do not appear to have been acted upon by the chancellor.

It is first insisted that the chancellor erred in sustaining a demurrer to the plea in abatement to the original action based on the fact that it was brought by plaintiff as next friend of Lloyd Skidmore, a lunatic, when it should have been brought by the latter's committee. In this connection it is insisted that the action, having been wrongfully brought, could not be properly revived. It appears, however, that Lloyd Skidmore subsequently died, and plaintiff was permitted to file an amended petition setting up the ownership of the property in question. The effect, therefore, is the same as if she had brought an original action to recover the property. Under the circumstances, the action of the trial court in

refusing to abate the action in no way prejudiced the substantial rights of the appellant.

Appellant filed exceptions to certain parts of the depositions of Daniel Blanton and appellee, wherein they testified to acts done and conversations had with persons who were dead at the time their testimony was given. The exceptions, however, were not acted upon by the trial court. Under these circumstances, they are deemed waived, and furnish no ground for reversal. Corn v. Sims, 3 Metc., 390; Hon v. Harned, 18 Ky. L. R., 864, 38 S. W., 688; Patterson v. Hansel, 4 Bush, 654; Lewis v. Wright, 3 Bush, 311. However, this court, in such a case, will consider only such evidence as is competent for the purpose of passing on the propriety of the judgment below. On the question of the purchase by Everett Skidmore we have the following facts: Appellee saw a title bond purporting to have been executed by Charles and Peggy Blanton. Peggy Blanton was the owner of the land at the time. For four or five years prior to his death Everett Skidmore rented the land to others. Appellant knew that these tenants were occupying the land as tenants of Everett Skidmore. Appellee says that defendant told her he had the writing for the land. He admits that after Everett Skidmore's death he held the land several years as administrator. He further admits that during that time Peggy Blanton, from whom he subsequently purchased the land, did not claim the land. He justifies his purchase on the ground that some one told him that Everett Skidmore had no paper title. He stated to several people that he ought to have the land for taking care of the children. Disregarding, therefore, all the incompetent evidence in the case, we conclude that as Peggy Blanton had the legal title to the land, and after disposing of it in some way to Everett Blanton she never thereafter laid claim to the land, this fact, considered in connection with the fact that appellee saw a writing purporting to be signed by Peggy Blanton and Charles Blanton covering the land in question, that defendant admitted having such writing, that he knew that Everett Skidmore claimed the land and had been renting it for several years to persons who had occupied it as his tenants, and that appellant admitted that he held the land five or six years as his brother's administrator, and he acquired title to it simply because he had been informed that his brother had no paper title, is sufficient to sustain the charge that there had been some kind of a

conveyance from Peggy Blanton to Everett Skidmore, and that appellant, while acting as administrator for his brother, acquired title to the land with actual knowledge of his brother's title, and is, therefore, sufficient to sustain the judgment in this respect.

But it is insisted that the evidence of Jane Harris to the effect that she and Everett Skidmore were married was incompetent, because Everett Skidmore was dead at the time the evidence was given, and that, therefore, there is no competent proof of the marriage or of the legitimacy of Nancy and Lloyd Skidmore. Passing the question of the competency of the evidence of appellee on this question, we conclude that the other evidence on this question is sufficient. The evidence leaves no doubt that appellee and Everett Skidmore lived together as husband and wife, and enjoyed the reputation of being married. The two children were recognized not only by others but by appellant, John Skidmore, as being the children of Everett. John Skidmore admits that as administrator he turned over to appellee certain property for the children. Not only that, but he took the two children and maintained them for several months. Furthermore, appellant claimed that he was entitled to the land for taking care of the children. In addition to these facts the record of the divorce of appellee from Everett Skidmore was introduced by appellant himself. These circumstances are sufficient to create the presumption of marriage, and, in the absence of evidence to the contrary, to establish the legitimacy of Nancy and Lloyd Skidmore. Taylor & Tisdale v. Shemwell, 4 B. Mon., 575; Strode, &c. v. Magowan's Heirs, 2 Bush, 621; Dannelli, &c. v. Dannelli, 4 Bush, 51; Klenke v. Noonan, &c., 26 Ky. L. R., 305.

Further complaint is made of the fact that although the judgment directed appellant, and in case of default on his part, the commissioner, to convey the land to appellee, no opportunity was given to appellant to make the deed, but the commissioner immediately produced and acknowledged the deed to appellee. While the proper practice in such cases is to provide that in the event the party against whom the judgment is rendered fails to make the deed within a specified time, the commissioner shall make the deed, yet the fact that a deed was made immediately by the commissioner, without giving appellant an opportunity to make it, affords no ground for reversal.

Judgment affirmed.