## Richardson's Adm'r et al. v. Borders.

(Decided March 18, 1932.)

(As Extended on Denial of Rehearing Dec. 16, 1932.)

SHUMATE & SHUMATE and BURNAM & GREENLEAF for appellants.

HUGH RIDDELL and J. NATHAN ELLIOTT for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Wilgus Richardson died intestate a resident of Estill county on January 6, 1929, leaving an estate of approximately $10,000, which consisted principally of cash on deposit in bank. Gilbert Richardson qualified as administrator of his brother's estate and instituted this action in the Estill circuit court for a settlement of the decedent's estate. The appellee, Glenn Forrest Borders, was made a defendant, and the administrator asked that he be required to answer and assert any claim that he might have against the estate. All interested parties were made either plaintiffs or defendants.

The appellee filed an answer and counterclaim in which he alleged that he was the son and only heir at law of the decedent, Wilgus Richardson. He further alleged that Wilgus Richardson and his mother were married on November 22, 1905, and that he was born in lawful wedlock on June 27, 1906, while this union was still in existence. The administrator filed a reply which was in two paragraphs. The first paragraph was a traverse, and in the second paragraph he alleged that in a prior action between the decedent and the mother of appellee it had been "decided and adjudged upon the allegations of the answer and counterclaim which the said deceased, Wilgus Richardson, filed

in said prior action on the 11th day of December, 1906, and upon the proof submitted to the court in support, thereof, that at the time of the marriage of said Wilgus Richardson and said Ellen Elliott Richardson, on November 22nd, 1905, the said Ellen Elliott Richardson was pregnant by another man without the knowledge of said Wilgus Richardson and that in said final judgment in said prior action this court finally adjudged and decreed to the said Wilgus Richardson an absolute divorce from the bonds of matrimony with the said Ellen Elliott Richardson, on the ground that the said Ellen Elliott Richardson was at the time of their said marriage on November 22nd, 1905, pregnant by another man without said Wilgus Richardson's knowledge. These plaintiffs and defendants say that the said final judgment of this court in said former action has never been appealed from, vacated, modified,. or set aside, and is still in full and complete effect as the final judgment of this court. The whole record of the proceedings in the said former action is hereby referred to and made part hereof the same as if fully set out herein and attached hereto. These plaintiffs and defendants say that the said male child which was born to said Ellen Elliott Richardson on or about June 27th, 1906, was the same child of which she was finally adjudged in the said prior action to have been pregnant without the knowledge of said Wilgus Richardson, at the time of this said marriage with said Ellen Elliott Richardson on November 22nd, 1905, and that by reason of said judgment the said male child which was born to Ellen Elliott Richardson on or about June 27th, 1906, was finally adjudged to be, and now is, a bastard for all purposes whatever, and is not entitled to inherit any part of the estate of the deceased, Wilgus Richardson, whether the said male child so born to said Ellen Elliott Richardson is in fact the defendant and cross petitioner, Glenn Forrest Borders, as he alleges in his amended answer, counterclaim and cross petition, or whether the said male child is another person."

A demurrer to the second paragraph of the reply was sustained. Proof was heard, and upon submission of the case the court adjudged that Glenn Forrest Borders was the son and only heir at law of the decedent, Wilgus Richardson, and as such was entitled to the whole of his estate. From that judgment the plaintiffs have appealed.

The question presented by this appeal is whether the lower court erred in sustaining the demurrer to the second paragraph of the plaintiffs' reply wherein they set up the judgment in the divorce case between Wilgus Richardson and appellee's mother as conclusive of appellee's illegitimacy. Wilgus Richardson and Ellen Elliott were married on November 22, 1905, and while this union existed a child was born to the wife on June 27, 1906. Shortly after the birth of the child Wilgus Richardson left his wife, and she brought suit for divorce alleging cruel and inhuman treatment in that he charged that she was at the time of their marriage pregnant by another man. Wilgus Richardson filed an answer and counterclaim. He admitted that he had made the charges set out in the petition, and he alleged affirmatively that the child born on June 27, 1906, was not his child but was the illegitimate child of his wife with which she was pregnant at the time of their marriage. Proof was heard, and on August 8, 1908, judgment was entered granting a divorce to Wilgus Richardson upon his counterclaim and dismissing his wife's petition. It was alleged in the counterclaim that at the time of the marriage of Ellen Richardson to the defendant, Wilgus Richardson, to wit, November 22nd, 1905, Ellen Richardson was pregnant by another man without the defendant's knowledge, and it was on this ground that the divorce was granted.

Shortly after the rendition of this judgment, the child born to Ellen Richardson was placed in the Widows' and Orphans' Home maintained in Louisville by the Christian Church. Later the child was adopted by Mrs. W. E. Borders, and thereafter was known as Glenn Forrest Borders. It is conceded that the appellee is the child born to Ellen Richardson on June 27, 1906.

Section 166 of the Kentucky Statutes provides that:

"Every child shall be deemed a bastard who shall be begotten and born out of lawful wedlock; and in cases where a woman shall have been divorced from her husband on the ground of her being pregnant by another man at the time of her intermarriage, and having concealed her pregnancy from her husband, the child of which she was thus pregnant shall be deemed a bastard for all purposes whatever."

Prior to 1858, section 1 chapter 6 of the Revised Statutes read:

"Every child shall be deemed a bastard * * * who shall be begotten and born out of lawful wedlock."

The General Assembly of 1858 as an amendment to chapter 6 of the Revised Statutes enacted what is now the last clause of section 166 of our present Statutes. Chapter 727, Acts of 1858. It was clearly the intention of the Legislature in enacting this statute to fix the status of the child as that of a bastard when a divorce is granted to the husband of such child's mother on the ground of her being pregnant by another man at the time of her marriage and for concealing this pregnancy from her husband; and the status of the child is fixed for all purposes including that of inheritance.

When the appellee's status was fixed by the judgment in the divorce proceeding and he thereby became incapable of inheriting from Wilgus Richardson, he was not deprived of any legal right then capable of enforcement. The right to take property, either real or personal, by inheritance, is one created by law, and the Legislature, in the absence of constitutional limitations, has absolute power to say who shall inherit. Those named as heirs and distributees in the existing laws of descent and distribution have no vested rights until intestate's death, and, as to them it necessarily follows that the Legislature may at will change the law governing the manner in which property shall descend and be distributed without affecting vested rights. Section 166 of the Statutes in clear and unmistakable language provides that a child, though born in lawful wedlock, is illegitimate when adjudged in a divorce action to have been begotten before the marriage by another than the mother's husband. The statute makes the judgment in the divorce proceeding conclusive of the question of legitimacy, and precludes the child from thereafter litigating that question. The judgment granting Wilgus Richardson a divorce from appellee's mother established appellee's status and placed him in a class incapable of inheriting from Wilgus Richardson under the laws of descent and distribution. He was deprived of no right concerning the loss of which he could then or can now legally complain. The Legislature deemed it proper to make the decree in the divorce proceeding determinative of the question of

legitimacy and consequently of the right of the child to inherit from the mother's husband. With the wisdom of its action we are not concerned. There, is no ambiguity in the language of the statute, and nothing is left to construction.

The statute does not violate the constitutional guaranties of due process and equal protection of the law, nor does it violate subsections 8 and 29 of section 59 of our Constitution as is suggested. The argument that it violates section 59 is based on the theory that as construed it was intended to be a statute of descent and distribution, but, as heretofore stated, it was intended merely to fix the status of a child under designated circumstances, and it happens that a child occupying such a status cannot inherit from the mother's divorced husband under our statute of decent and distribution. The Legislature no doubt had these statutes in mind when section 166, Ky. St., was enacted, and the prevention of litigation such as this many years after a divorce had been granted on the ground specified in the act, and when the facts then established were no longer susceptible of proof, was probably one of the impelling reasons for its enactment. The facts that would be necessary now to establish appellee's claim, if section 166 were not in the way, would have defeated the divorce action of his mother's husband. His mother had a twofold interest in that litigation: First, to prevent the divorce on the ground asserted in the answer and counterclaim; and, second, to protect her child from the charge of illegitimacy. The interests of the mother and child in that suit were identical, and the mother had motives both of self-interest and affection impelling her to make defense. Whether or not the doctrine of virtual representation applies in a case of this character need not be determined, however, since we have concluded that appellee was deprived of no pecuniary right.

Judgment is reversed with directions to overrule the demurrer to the second paragraph of the reply and for further proceedings consistent herewith.

The whole court sitting.

Willis, Clay, and Perry, JJ. dissenting.

Willis, J. (dissenting).

I cannot concur in the conclusion of the court, and the importance of the question justifies a statement of my views.

Glenn Forest Borders was born in lawful wedlock in seven months and seven days after the marriage of his parents. He was, therefore, a legitimate child possessing all the rights, liberties, and privileges accorded by law to any legitimate child. Cronin v. Cronin, 234 Ky. 207, 27 S. W. (2d) 950; Vanover v. Steele, 173 Ky. 116, 190 S. W. 667; Veron's Adm'r v. Veron, 228 Ky. 56, 14 S. W. (2d) 185; Skidmore v. Harris, 157 Ky. 756, 164 S. W. 98; Dunn v. Garnett, 129 Ky. 728, 112 S. W. 841. But the decree of divorce granted to Wilgus Richardson after the birth of the baby, according to the conclusion of the court, operated to deprive the child of his legitimate status including his right to inherit from his father, and required him to be "deemed a bastard for all purposes whatever." The court so holds, notwithstanding the fact that the boy was not a party to the action in which the decree was rendered and could not be made a party thereto. He suffers these serious consequences without an opportunity to be heard, or to be represented, and without any means of showing the truth respecting his parentage. This shocking result is reached by giving literal and conclusive effect to section 166, Ky. Statutes, which provides that "in cases where a woman shall have been divorced from her husband on the ground of her being pregnant by another man at the time of her intermarriage, and having concealed her pregnancy from her husband, the child of which she was thus pregnant shall be deemed a bastard for all purposes whatever." I need not pause to point out a possible construction that would so mitigate the meaning and effect of the statute as to render it valid, since the court accepts it literally as written and gives it the fullest and most sweeping effect. In my opinion, as so construed and applied, the statute is invalid under both the state and federal Constitutions.

Section 166 of the present statutes is a part of an act adopted in 1892. The purpose of the act was to provide the procedure for the affiliation of bastards, and to make provision for their support by the father. The legislation has no ōther purpose or provision, and

deals with no other matter. The definition quoted above from section 166 ought to be confined within the purview of the act and not allowed to affect the matter of inheritance, which is dealt with elsewhere in the Statutes. Although a different definition has been announced in some states (7 C. J. p. 939), the word "bastardy" in common understanding connotes the proceeding to affiliate a bastard child, or the offense of procreating such an offspring. At least one compelling reason for rejecting the construction of the act adopted is found in the constitutional guaranties of due process and equal protection of the law.

The Bill of Rights excludes the rights and liberties enumerated therein from the powers of government. Section 26. Hence the Legislature may not restrict the right of enjoying and defending life or liberty, the right of seeking and pursuing happiness and safety, or the right of acquiring and protecting property. Section 1, subsecs. 1, 3, 5. Arbitrary power over the lives, liberties and property of the people is condemned (section 2), and only by due process of law may one be deprived of his rights, his status, or his property. Fourteenth Amendment, Constitution of the United States.

The right to be and to remain legitimate is an important and valuable one. It includes the right of an infant to support, maintenance, and education from his father. That is a pecuniary property right. Other property may be less important and less valuable.

Students of the common law need only to be reminded of the disabilities and disadvantages of illegitimacy. 3 R. C. L. sec. 48, p. 768.

The amelioration that has been achieved in the progress of the law, although lessening somewhat the cruelties and hardships visited upon bastards, has not altogether abolished them. It is safe to say that any amount of property would be given up in preference to a surrender of the status of legitimacy. As said by the Supreme Court of Alabama:

> "A status of legitimacy is a right of value and should have the same protection as property rights."

Henley v. Foster, 220 Ala. 420, 125 So. 662, 664.

The effect of the statute in this case is to reduce the child from his legitimate status, not by a rule of law or proof of a fact, but by a decree of divorce between his parents rendered after he was born. The immediate and direct effect is to deprive the child of his right to support and protection due from his father. That is a particular pecuniary right of inestimable value and partakes of the character of property. In substance and effect, section 166 creates a conclusive presumption that a child born legitimate must be deemed a bastard when a divorce is granted upon certain ground. It precludes the ascertainment of the truth in a judicial hearing where the party concerned may contest the issue and be heard in his own behalf. In my opinion it is not within the power of the Legislature to give any such operation to a decree of divorce. When a right depends upon a fact, the party affected has a constitutional right to a judicial determination of the existence or nonexistence of such fact. The Legislature may not dispense with proof of the fact, or substitute for it a presumption that is arbitrary and unreasonable. Daniel Webster, in the Dartmouth College Case, 4 Wheat, 518, 581, 4 L. Ed. 629, thus defined the conception:

> "By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities, under the protection of the general rules which govern society. Every thing which may pass under the form of an enactment, is not, therefore, to be considered the law of the land."

The right of a child to inherit from its father depends upon the fact of fatherhood and legitimacy under the law at the time of his birth. The child cannot be made subject to detrimental consequences by a subsequent decree to which he was a stranger. He is entitled to have his rights determined by due process of law. Although the right to inherit might be abolished, it cannot be taken from one entitled thereto so long as it is granted to any one.

Parentage is a question of fact. It cannot be determined by legislative fiat or by a decree to which the one concerned is a stranger, and without proof of

the fact. If a child is in fact the offspring of a husband, a subsequent divorce from the mother on any ground cannot alter the fact. The legislature may not make the fact of parentage depend upon a divorce decree subsequently rendered with no provision for representation or a hearing by the child. In any case where the rights of the child depend upon the fact of his parentage, he is entitled to a chance to show the fact, and cannot be denied due process of law by a presumption created by statute, which may not be rebutted by proof. The child here has shown that he was born in lawful wedlock and was legitimate under the law. That fact and that status cannot be overthrown by a judgment to which he was not a party or privy. The effect of the statute, as construed by the court, is to create a conclusive presumption of bastardy from the simple fact of a divorce between his parents on a certain ground. A statute which assumes a fact, and forbids it to be controverted, is arbitrary and cannot stand under the due process clause of the Constitution when vital rights depend upon such fact.

When the status, rights, liberties, or immunities of any man depends upon a fact asserted, due process requires a judicial inquiry as to the existence of that fact, with the right to adduce proof, to be heard, and to have the unfettered judgment of a judicial tribunal. Ohio Valley Water Co. v. Ben Avon, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908; Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 76 L. Ed. 598, decided Feb. 23, 1932.

The power to create certain presumptions, within fixed limitations, is not denied. "If the presumption is not unreasonable, and is not made conclusive of the rights of the person against whom raised, it does not constitute a denial of due process." Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A. 463. Yet, "a statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment." Bailey v. Alabama, 219 U. S. 219, 31 S. Ct. 145, 55 L. Ed. 191; Manley v. State of Georgia, 279 U. S. 1, 49 S. Ct. 215, 217, 73 L. Ed. 575.

"Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property."

In the case of Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 362, 76 L. Ed. 772, decided by the Supreme Court of the United States on March 21, 1932, it was said:

"The government makes the point that the conclusive presumption created by the statute is a rule of substantive law, and, regarded as such, should be upheld; and decisions tending to support that view are cited. The earlier revenue acts created a prima facie presumption, which was made irrebuttable by the later act of 1926. A rebuttable presumption clearly is a rule of evidence which has the effect of shifting the burden of proof, Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 43, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463; and it is hard to see how a statutory rebuttable presumption is turned from a rule of evidence into a rule of substantive law as the result of a later statute making it conclusive. In both cases it is a substitute for proof; in the one open to challenge and disproof, and in the other conclusive. However, whether the latter presumption be treated as a rule of evidence or of substantive law, it constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality, and the result is the same, unless we are ready to overrule the Schlesinger Case (270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224), as we are not; for that case dealt with a conclusive presumption, and the court held it invalid without regard to the question of its technical characterization. This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment. For example, Bailey v. Alabama, 219 U. S. 219, 238, et seq., 31 S. Ct. 145, 55 L. Ed. 191; Manley v. Georgia, 279 U. S. 1. 5, 6, 49 S. Ct. 215, 73 L. Ed. 575. 'It is apparent,' this court said in the Bailey Case (219 U. S. 239, 31 S. Ct. 145, 151, 55 L. Ed. 191)

'that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions.'

"If a legislative body is without power to enact as a rule of evidence a statute denying a litigant the right to prove the facts of his case, certainly the power cannot be made to emerge by putting the enactment in the guise of a rule of substantive law."

Nor is the force of this reasoning obviated by conceding the power of the Legislature to enact or to repeal laws regarding descent and distribution. No such law is involved in this case. Legitimate children are yet entitled to inherit from both parents. What section 166 does is, not to change the law of inheritance, but to declare illegitimate a child that was legitimate when born. The result is not achieved by a substantive law, but by giving effect to a decree of divorce subsequently rendered in a case between other parties in which the child was not represented, and had no opportunity to be heard. The equal protection of the law requires that all legitimate children be treated alike, and this safeguard cannot be subverted indirectly by a statute declaring that certain ones must be deemed bastards, if their parents get a divorce on a certain ground.

Clay and Perry, JJ. concur in this opinion.