J.I. (Ike) ELLIS: Greene Ellis; Nannie Smith; Rhoda Perkins; unknown persons, heirs, devisees, legatees, grantees, personal representatives, successors and assigns of Belle Sharp; unknown persons, heirs, devisees, legatees, grantees, personal representatives, successors and assigns of Ollie Walker; unknown persons, heirs, devisees, grantees, personal representatives, successors and assigns of Grace Walker Gibbons; unknown persons, heirs, devisees, grantees, personal representatives, successors and assigns of Calvin Ellis; and all persons claiming any right, title or interest in or lien upon any of the lands described herein, and all persons claiming any right, title or interest in or to the Estate of James Shelton Ellis, deceased, Appellants,

v.

Morris Alvin ELLIS, Appellee.

No. 87–SC–187–DG.

Supreme Court of Kentucky.

June 9, 1988.

W.M. Cox, Jr., Williamsburg, for appellants.

Gary Brittain, Corbin, James Wren, Williamsburg, for appellee.

LAMBERT, Justice.

More than two years after the intestate death of James Shelton Ellis, appellee brought this action seeking a declaratory judgment that he was the decedent's illegitimate child and sole heir. Appellants are persons who claim to be the decedent's heirs at law. The trial court dismissed appellee's claim as barred by the statute of

limitations.[1] The Court of Appeals reversed the trial court and directed reinstatement of the suit. We granted discretionary review to consider whether appellee's claim is time-barred or whether he may proceed with an attempt to establish his paternity and status as the decedent's heir.

For our purposes, the facts of this case are neither complex nor in dispute. Appellee, Morris Alvin Ellis, was born out of wedlock in 1926. In 1939, when he was thirteen years old, his mother died. In February of 1981, James Shelton Ellis died intestate and unmarried. At no time was appellee's mother married to James Shelton Ellis nor did he or anyone on his behalf ever seek an adjudication that he was the illegitimate son of the decedent prior to commencement of this action on June 1, 1983.

Upon review, the Court of Appeals held that this Court's decision in *Pendleton v. Pendleton*, Ky., 560 S.W.2d 538 (1977), holding KRS 391.090 unconstitutional, and our decision in *Fykes v. Clark*, Ky., 635 S.W.2d 316 (1982), place illegitimate children in the same posture as legitimate children for the purpose of inheritance, and that KRS 413.120(2) did not commence to run until the death of the decedent. Therefore, the Court of Appeals held appellee's claim to have been timely filed.

■ Appellants first contend that appellee's claim is barred by KRS 406.031. This contention is wholly without merit as this statute merely places a time limitation upon the bringing of paternity actions for the purpose of establishing a duty of support during the minority of a child. In *Sweat v. Turner*, Ky., 547 S.W.2d 435, 436 (1977), we held that the Uniform Act on Paternity, KRS 406, *et seq.*, was

> to give the mother a remedy to compel the putative father to contribute to the support of his illegitimate child. The statute also provides a device affording both the father and mother the right to acknowledge paternity. The statute does not afford the father the right to

come into court to have his paternity determined.

Relying on *Sweat v. Turner, supra,* the Court of Appeals held that "[i]t (the Uniform Act on Paternity) bears no relationship to the laws governing intestate succession." While we substantially agree with this conclusion, its application is limited to those cases where no action has been brought under the Uniform Act on Paternity. If such an action is brought and prosecuted to judgment on the merits, the outcome is conclusive on the issue of paternity since such determination is essential to an adjudication of a duty of support. If the issue of paternity is litigated and determined as an element of an action for support, the result is *res judicata* as to other legal rights which exist by virtue of paternity.

■ Appellants next contend that appellee's claim is time-barred by virtue of KRS 396.025. We simply observe that this statute is designed to protect the decedent's estate against creditors' claims unless they are asserted within one year after the appointment of the personal representative. The claim appellee asserts is not in the nature of a creditor's claim, but is an assertion of ownership by virtue of inheritance from the decedent.

■ By its unmistakable language, KRS 396.025 applies only to those claims "which arose *before* the death of the decedent...." Respondent's claim for inheritance did not arise before the decedent's death. Neither respondent nor anyone else could have claimed a right to inherit while the decedent was still living. Likewise, respondent could not have made a claim to be his putative father's heir because living persons do not have heirs. Expectant heirs have nothing more than a possibility of inheritance and have no present interest in property they may later inherit. In 26A C.J.S. *Descent and Distribution* § 61 (1956), the foregoing is stated as follows:

> No one is an heir to a living person, in strict usage of the term 'heir,' and, conversely, a living person can have no heirs. Before the death of the ancestor,

---

**1.** The order of the trial court did not specify which statute of limitations it relied on.

an expectant heir or distributee has as such no interest, estate, or rights, particularly no vested interest or rights in the property which he may subsequently inherit. Any prospective interest, or right to inherit, as an heir is a mere expectance or possibility, a mere hope or anticipation. An expectant heir cannot on the basis of his expectancy maintain an action during the life of his ancestor to cancel a transfer made by such ancestor, and he cannot maintain a suit for the enforcement or adjudication of a right in the property. In an extraordinary case, however, wherein the institution of an action is tantamount to the commencement of an action by a next friend, expectant heirs may maintain an action.

The law of Kentucky is fully in accord. In *Arciero v. Hager*, Ky., 397 S.W.2d 50, 53 (1965), this Court stated:

Appellant had no fixed right to inherit under Kentucky law until the date of the death of the ancestor from whom inheritance is claimed. Obviously, no person had more than an expectancy or prospect of inheritance during the lifetime of the person from whom inheritance is claimed.

And in *Richardson's Adm'r. v. Borders*, 246 Ky. 303, 54 S.W.2d 676, 677 (1932), we said:

Those named as heirs and distributees in the existing laws of descent and distribution have no vested rights until the intestate's death, . . . .

By virtue of these principles of law, respondent had no legally recognized claim for inheritance at any time during the decedent's lifetime. Therefore, KRS 396.025 does not apply.

Appellants further contend that appellee's claim is barred by laches or estoppel. As these equitable doctrines did not form the basis of the trial court's judgment, and were not addressed by the Court of Appeals, we will not review these issues. Upon remand, if appellants choose, these defenses may again be presented to the trial court, but nothing contained herein shall be regarded as an expression of opinion as to their validity.

Finally, we turn to appellant's contention that appellee's claim is barred by KRS 413.120(2), a five-year statute of limitation, or by KRS 413.160, a ten-year statute of limitation. Appellants assert that the decisive question is when the applicable statute begins to run. In substance, appellants argue that the statute was tolled during appellee's minority, but began to run when his age disability was removed, resulting in a bar to his claim either five years or ten years thereafter. To the contrary, appellee argues that neither statute commenced to run, if at all, until the death of his putative father.

■ Despite a superficial appeal in appellants' argument, we believe it overlooks the basic fact that appellee had no claim at the time appellants contend the statute commenced to run against him. In 1947, appellee reached the age of twenty-one years (then the age of majority in Kentucky). As an adult, he had no claim for support and could not have sought to establish paternity in a bastardy proceeding under KRS 406.010 (repealed by Acts 1964). Likewise, appellee had no claim for inheritance. This is so for two fundamental reasons: First, his putative father was still living (*Arciero v. Hager, supra*), and second, KRS 391.090 absolutely prohibited inheritance by illegitimate children from their fathers. To hold, as appellants urge, that appellee's claim was barred either five years or ten years after his twenty-first birthday, would result in barring his claim before it ever accrued. Such a result is impermissible. As we said in *Saylor v. Hall*, Ky., 497 S.W.2d 218, 225 (1973):

Surely then, the application of purported limitation statutes in such manner as to destroy a cause of action before it legally exists cannot be permissible if it accomplishes destruction of a constitutionally protected right of action.

It is now beyond dispute that an illegitimate child has a constitutionally protected right to inherit from his father. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). *Pendleton v. Pendleton, supra*.

Theoretically, appellee could have brought an action against his putative father for a declaratory judgment as to his status as a child. Whether such an action could have been maintained in view of the lack of any legal consequence in the outcome is doubtful. If such could have been maintained, the only result would have been some personal satisfaction in having a court declare whether or not James Shelton Ellis was appellee's father.[2] We will not now impose upon appellee a duty to have brought a speculative lawsuit which had no object other than personal satisfaction.

In final analysis, we must return to certain fundamental principles. Prior to this Court's decision in *Pendleton*, illegitimate children could not inherit from their fathers except in the very limited circumstances allowed by KRS 391.090. There was no statute of limitation which barred such claims as there were no such claims. Illegitimate children are now entitled to inherit from either parent just as legitimate children.

Later, in *Fykes v. Clark, supra*, we held that a posthumous, illegitimate child had standing to attempt to prove paternity for the purpose of inheritance. Our holding was premised on the view that there was

> no valid distinction between *an illegitimate child born before the putative father's death, who does not attempt to prove paternity until after the putative father's death*, and the case at hand. (Emphasis added.)

Thus, we held that an action for inheritance may be brought by an illegitimate child after the putative father's death.

In *Fykes*, we recognized the significant impact our decision might have upon the certification of real estate titles, the prompt and orderly settlement of estates, and the proliferation of fraudulent claims against decedent's estates. We stated, however, that "[t]he courts are powerless to address these problem areas, which fall clearly within the province of the legisla-

ture." Despite identification of the problem and acknowledgment of our inability to act, the legislature has not yet enacted any statute of limitation. We may not appropriate legislative prerogative and create a statute, nor may we engage in some tortured interpretation of existing statutes to provide a more appropriate time limitation than may otherwise exist.

The Opinion of the Court of Appeals is affirmed.

GANT, LEIBSON and VANCE, JJ., concur.

VANCE, J., concurs by separate opinion in which GANT and LEIBSON, JJ., join.

WINTERSHEIMER, J., dissents by separate opinion in which STEPHENS, C.J., and STEPHENSON, J., join.

VANCE, Justice, concurring.

I concur in the result reached by the majority. The dissent suggests that K.R.S. 396.025 which provides time limitations after which claims against a deceased's estate are barred should be applicable in this case. The majority correctly concludes, however, that this statute is not applicable because it deals only with creditors' claims against an estate. As a procedural matter, if the assertion of the right to inherit were to be considered a claim against an estate subject to being barred by the time limitations of K.R.S. 396.025, all heirs, legitimate or otherwise, would be required to file a claim within the period of limitations or else their right to inheritance would be barred.

The length of time required before estates can be settled with finality is, of course, a matter of great concern. The United States Supreme Court, in its decision in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), has made it beyond dispute that an illegitimate child has a constitutionally protected right to inherit from its father. This being so, that

---

**2.** Annexed to appellee's complaint was an authenticated copy of a "delay" birth certificate dated March 11, 1943. This instrument discloses that Morris Alvin Ellis was born on De-

cember 18, 1926; that he was not legitimate; and that his father's name was Jim Ellis. Presumably, this satisfied whatever need for personal satisfaction appellee may have had.

right cannot be foreclosed by statutes of limitation during the infancy of the child. So, as a practical matter, an illegitimate child born after the death of its father can appear and assert its right of inheritance at least until it reaches the age of majority. A state is powerless to prevent this time lag which impacts upon the finality of settlement of estates. A state can enact a statute of limitations which provide a reasonable time limit within which an illegitimate child, after it reaches the age of majority, must assert its right to inherit from the estate of its father. This problem was noted by this court in our decision in *Fykes v. Clark*, Ky., 635 S.W.2d 316 (1982), but the General Assembly of Kentucky has not yet enacted any such legislation.

GANT and LEIBSON, JJ., join in this concurring opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent because the majority opinion reaches a very strained result.

KRS 396.025 provides that *all* claims against a decedent's estate which arose before the death of the decedent *or after* and whether founded on contract tort or *other legal basis* are barred unless proven as required by law within one to three years. I must disagree with the observation by the majority that this statute does not apply to this claim because the statute deals only with creditor's claims. There is no language in the statute which limits the term "claim" as the majority asserts.

It would appear that there is no claim that is more important and more all inclusive than a declaration of rights which would permit an illegitimate offspring to claim to be the heirs at law of the decedent. The claim arises from an alleged paternity relationship which of necessity had to occur before death.

There is no evidence in this record which indicates that the decedent ever acknowledged any paternity of the claimant. In 1981, James Shelton Ellis died intestate and unmarried. At no time was he married to the mother of Morris Ellis and Morris Ellis did not seek any adjudication that he was the illegitimate son of the decedent before 1983.

The real question is how long can an illegitimate child wait until any alleged right of inheritance can be made. Of necessity, in this case, the claim is made against a dead person who cannot obviously respond.

Of greater concern is the potential consequence of the majority decision. I do not believe the majority intends to elongate the closing of probate estates by virtue of this decision. Death is universal, and probate in some fashion, always follows. Consequently every person is affected by the decision of this Court in this case. I trust that the closing of an estate in the future will not be unduly prolonged by this decision.

STEPHENS, C.J., and
STEPHENSON, J., join in my dissent.