RENDERED:  APRIL 16, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1692-MR

THOMAS J. TUCKER                                                    APPELLANT


APPEAL FROM WAYNE CIRCUIT COURT
v.       HONORABLE VERNON MINIARD, JR., JUDGE
ACTION NO. 19-CI-00223


CINDY TUCKER, AS
ADMINISTRATRIX OF THE ESTATE
OF JOHN KEVIN TUCKER AND AS
AN HEIR AT LAW OF JOHN KEVIN
TUCKER; AND JOYCE TUCKER, AS
A POTENTIAL HEIR AT LAW OF
JOHN KEVIN TUCKER                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

JONES, JUDGE:  Thomas J. Tucker ("Thomas") appeals from the Wayne Circuit

Court's order dismissing his complaint for determination of heirship following the

death of John Kevin Tucker ("John").  Following our careful review of the record

and applicable law, and being otherwise sufficiently advised, we affirm.

# I. BACKGROUND

John and Patricia Tucker ("Patricia") married on February 22, 1986. Thomas was born a few months later in August of 1986. John was listed as Thomas's father on the birth certificate. John and Patricia separated on February 20, 1989. In 1991, Patricia sought assistance from the Wayne County Attorney with respect to child support for Thomas. Thereafter, the Wayne County Attorney filed a support action against John on Patricia's behalf. John's actual paternity of Thomas became an issue in the support action, and by order entered August 18, 1992, John was directed to submit to DNA testing, with the results to be filed in the support action.

Blood was drawn from John, Patricia, and Thomas for the purpose of completing the DNA testing. A paternity evaluation report from Genetic Design was filed in the support action on October 19, 1992. In relevant part, the report states: "The alleged father JOHN K TUCKER lacks the following genetic markers present in the child THOMAS TUCKER and absent in the mother: HLA B61. Therefore, the alleged father cannot be the biological father of the child. The alleged father is also excluded by DNA probe technology." With the assistance of the Wayne County Attorney, Patricia moved to voluntarily dismiss the support action. By order entered December 1, 1992, the circuit court granted Patricia's motion and dismissed the support action. The circuit court's dismissal order

expressly states: "this action is hereby dismissed on the grounds that the blood tests taken in this action preclude the defendant from being the father of the child named in the complaint." A similar statement was included in the circuit court's findings of fact, conclusions of law, and judgment of marriage dissolution: "One child was born during the marriage, namely, Thomas Joe Tucker, age 6, but blood tests revealed that John K Tucker was not the biological father of said child."

After John and Patricia's divorce, John remained active in Thomas's life. Thomas maintains that John referred to Thomas as his son, kept in touch with him, exchanged letters and cards with him, even during the period of time when John was incarcerated in federal prison, and provided him with monetary support. Thomas further alleges that he believed John to be his actual, biological father during his infancy, and that he did not learn the true facts until he reached majority. Even after adulthood, however, Thomas continued to refer to John as his father, and John referred to Thomas as his son. The two shared holidays together and otherwise treated one another as family.

John died intestate on January 28, 2019. At the time of his death, John was married to Cindy Tucker ("Cindy"). Cindy was appointed as administratrix of John's estate. As part of the probate action, John's heirs at law and next of kin were identified as Cindy and John's mother, Joyce Tucker ("Joyce"). With the assistance of counsel, Thomas filed a petition for a

-3-

determination of heirship in the district court probate action. The district court dismissed Thomas's petition for lack of jurisdiction, noting that it was adversarial in nature and requested equitable relief making circuit court the appropriate forum to litigate Thomas's claims.

On August 9, 2019, Thomas filed a verified complaint in Wayne Circuit Court. Therein, Thomas alleged he was entitled to be treated as John's natural child for the purposes of intestacy distribution based on the facts that (1) he was born into the marriage of John and Patricia; (2) John had always recognized Thomas as his son; and (3) John was listed as Thomas's father on Thomas's birth certificate. Alternatively, Thomas asserted that an "adoption by estoppel" was created where John held himself out as Thomas's father and Thomas relied on that fact.

John's Estate moved to dismiss Thomas's petition on the basis that Thomas's assertion that John was his natural father was barred by *res judicata* because John's paternity had been conclusively disproven during the support action, and that as a matter of law, Kentucky did not recognize adoption by estoppel in the context of inheritance disputes. The circuit court agreed with the Estate and dismissed Thomas's petition as a matter of law.

This appeal followed.

## II. Standard of Review

"A motion to dismiss for failure to state a claim upon which relief may be granted 'admits as true the material facts of the complaint.'" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (quoting *Upchurch v. Clinton County*, 330 S.W.2d 428, 429-30 (Ky. 1959)). Accordingly, "a court should not grant such a motion 'unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved[.]'" *Id.* (quoting *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977)). "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, . . . an appellate court reviews the issue de novo." *Id.* (citation omitted).

## III. Analysis

Pursuant to KRS[1] 406.011, "[a] child born during lawful wedlock, or within ten (10) months thereafter, is presumed to be the child of the husband and wife." As expressly stated in the statute, the presumption in favor of paternity is rebuttable. "While paternity *may* be established by a paternity action during a child's minority, paternity can also be established by a declaratory judgment action before or after the death of the putative father, an action to settle the estate, an action to quiet title, or by an action (such as this) for allowance of the intestacy

---

[1] Kentucky Revised Statutes.

share as a necessary condition of which the fact that the plaintiff is a child of the decedent must be established." *Wood v. Wingfield*, 816 S.W.2d 899, 905 (Ky. 1991). However, "[i]f the issue of paternity is litigated and determined as an element of an action for support, the result is *res judicata* as to other legal rights which exist by virtue of paternity." *Ellis v. Ellis*, 752 S.W.2d 781, 782 (Ky. 1988).

In this case, John's paternity was litigated as part of the support action filed by the Wayne County Attorney. In the order dismissing that action, the circuit court expressly stated: "That this action is hereby dismissed on the grounds that the blood tests taken in this action preclude the defendant [John] from being the father of the child [Thomas] named in the complaint [for support]." The district court's order was not disputed and was a document capable of being judicially noticed by the circuit court. As stated in *Ellis*, this conclusion is *res judicata* as to other legal rights which exist by virtue of paternity, which would necessarily include Thomas's right to inherit from the Estate based on being John's natural child. Therefore, we cannot conclude that the circuit court erred in concluding that the prior paternity action barred Thomas's claim based on John's alleged paternity.

Next, we must consider Thomas's claim that he should be allowed to inherit based on a theory of equitable adoption. There are two well-settled rules regarding adoption: (1) the right of adoption exists only by statute, and (2) there

must be strict compliance with the adoption statutes. *Wright v. Howard*, 711 S.W.2d 492, 494 (Ky. App. 1986). "The law of adoption is in derogation of the common law. Nothing can be assumed, presumed, or inferred and what is not found in the statute is a matter for the legislature to supply and not the courts." *S.B.P. v. R.L.*, 567 S.W.3d 142, 147 (Ky. App. 2018) (citing *Day v. Day*, 937 S.W.2d 717, 719 (Ky. 1997)). Additionally, "[t]he right of an adopted child to inherit is, however, based upon the statute, and not upon any common-law or civil law status." *Villier v. Watson*, 168 Ky. 631, 182 S.W. 869, 871 (1916).

"Upon entry of the judgment of adoption, from and after the date of the filing of the petition, the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal considerations, the natural child of the parents adopting it the same as if born of their bodies." KRS 199.520(2). This statute specifically provides that a judgment of adoption must be entered to confer inheritance and succession rights on the adopted person. No judgment of adoption was ever entered in this case. It is beyond the power of the courts to recognize an adoption based on conduct alone for the purpose of inheritance where a statute specifically requires entry of a judgment of adoption.

Additionally, we cannot agree that equity would demand recognition of adoption in this case even if it were a cognizable theory. At some point in time,

-7-

after Thomas reached majority, and well before John died, both parties were aware that John was not Thomas's natural father. Had John desired to adopt Thomas, he could have done so, thereby securing Thomas's inheritance rights. *See* KRS 405.390 ("An adult person over eighteen (18) years of age may be adopted in the same manner as provided by law for the adoption of a child and with the same legal effect, except that his consent alone to such adoption shall be required."). Aware of the facts, Thomas and John carried on their relationship without having it legally recognized. Equity then cannot step in to do what John, with full knowledge of the facts, could have but did not seek to do during his lifetime.

### III. CONCLUSION

For the reasons set forth above, we affirm the Wayne Circuit Court.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE CINDY TUCKER: |
|---|---|
| Donald L. Wilkerson III | |
| David M. Cross | Mark D. Knight |
| Albany, Kentucky | Somerset, Kentucky |