No. 13,860.

ESTATE OF MORROW.
MORROW *v.* MORROW.
(.. P. [2d] ..)

Decided May 3, 1937.

Mr. J. W. Kelley, Mr. A. X. Erickson, Mr. Albert E. Zarlengo, Mr. Ed. R. Moylan, for plaintiff in error.

Mr. Frank M. McDonough, Jr., Mr. Gilbert L. McDonough, Mr. Thomas H. Gibson, for defendants in error.

*In Department.*

Mr. Justice Knous delivered the opinion of the court.

Samuel H. Morrow, a resident of Adams county, Colorado, died at Aurora, intestate, on June 8, 1931. Letters of administration upon his estate were issued to a half brother, James H. Hamilton, one of the defendants in error here, on October 29, 1931, by the county court of Adams county. In due course petitions for determination of heirship were filed in the county court, whereby the following classes or individuals asserted they were heirs at law of the decedent, to wit:

The first group comprised the four sisters, a brother, and the above named half brother of the decedent; the second claimant was Marjorie Jean Morrow, a minor, the plaintiff in error in this proceeding, who appeared through a guardian ad litem and claimed to be the daughter of the decedent born in lawful wedlock; the third claimant, the mother of Marjorie Jean, calling herself

Winifred Imogene Morrow, claimed to be the widow of Samuel H. Morrow, deceased, and asserted upon occasion that she was the sole and only heir at law of the said decedent, and in other pleadings that she and her daughter Marjorie Jean were the sole heirs at law; the fourth claimant was Ruth Margaret Morrow, a minor, one of the defendants in error here, who claimed to be issue of the marriage of the deceased and Jessie Younker Morrow, also deceased.

In the county court the positions of the individual and group claimants were in direct opposition to each other, with the exception of Winifred Imogene and Marjorie Jean, who apparently ultimately claimed to be joint heirs of the decedent.

Trial was had in the county court, as a result of which the four sisters, the brother and the half brother of Morrow were adjudged to be his only heirs at law. Winifred Imogene Morrow, Marjorie Jean Morrow and Ruth Margaret Morrow appealed to the district court. Trial de novo was had in the district court without the intervention of a jury, and Ruth Margaret Morrow was decreed to be the sole and only heir of the said decedent.

During the course of the trial in the district court, due principally we believe, from an examination of the record, to the embarrassing and inconsistent position in which Winifred Imogene found herself, she filed a relinquishment of any interest in the estate she might have to her own daughter Marjorie Jean and to Ruth Margaret Morrow. Likewise, either previous to or during the trial in the district court, the sisters and brothers of Morrow became convinced that Ruth Margaret Morrow was his only heir and entered into some kind of a stipulation with reference to this fact, which was filed or offered in evidence during the course of the trial but does not appear here either in the record or as an exhibit. As the result of these various transactions the property interest of all the original claimants, except the claims of the two minor children which are directly opposed to each other, has

been disposed of and the matter is here for review upon the application of Marjorie Jean, who asserts in effect that the trial court erred in not adjudging her to be the sole heir of Morrow.

A very unusual situation exists in this case in that both the children before this court rely upon the common-law marriage of their respective mothers and deceased as basis of their claim of heirship. It would seem from the record that everyone, including counsel for the plaintiff in error, concedes that Ruth Margaret Morrow is the child of Samuel H. Morrow and Jessie Younker. However, the plaintiff in error contends that the proof was insufficient to show that Samuel H. Morrow was ever married to Jessie Younker. We believe the evidence was amply sufficient to establish the fact of the common-law marriage between the deceased and Jessie Younker Morrow, as the trial court found, and that Ruth Margaret Morrow is unquestionably the daughter of Samuel H. Morrow and lawful issue of this marriage.

The case of Marjorie Jean, however, presents an entirely different situation. Marjorie Jean was born July 30, 1927. Her mother in 1908 was married to one Herman J. Morse and admittedly as issue of this marriage two other children were born. In 1923 the mother, because of dissatisfaction with the amount of her husband's earnings, found employment with the deceased as his stenographer and continued to act for him in that capacity until some time in 1929. About the year 1924, according to her testimony, she entered into illicit relations with Morrow, which continued until March 27, 1927. In May, 1926, she filed a divorce action against Herman J. Morse, her husband, charging him with cruelty. Findings of fact were entered in her favor in July of the same year and final decree was entered on January 19, 1927. As will be observed from the dates mentioned, the greater part of the alleged illicit relations between the mother of Marjorie Jean and Morrow took place during the time she was married to Morse, and that in the nature of

things the child Marjorie Jean must have been conceived before the termination of this marriage. Although, as we have stated, the mother's testimony is to the effect that the illicit relations between herself and the deceased ended March 27, 1927, she continued to work for him until November 16, 1929, during which period she, from time to time, rendered accounts to him for her services as a stenographer in the name of W. Morse and upon which accounts there was a small balance at the time her employment ceased. On November 18, 1929, two days after her employment ceased, under the name of Winifred I. Morse, she filed in the juvenile court in the City and County of Denver, a petition alleging that Morrow was the father of her child Marjorie Jean and charging him with contributing to the delinquency or dependency of the child in failing to contribute to its support. On December 2, 1929, this petition was dismissed without prejudice. On December 10, 1929, she was fully paid by Morrow for her stenographic services and signed a receipt therefor as Winifred Morse. On April 24, 1930, under the name of Winifred I. Morse, she filed a second petition in the juvenile court of the City and County of Denver again alleging that Morrow was the father of her child Marjorie Jean, and charging him with contributing to her delinquency or dependency on substantially the same grounds as in the first petition. This proceeding was numbered 6854 and entitled: "In the Matter of the People in the Interest of Marjorie Jean Morse, and Concerning Samuel H. Morrow, father, Respondent." Morrow appeared in this proceeding and denied that he was the father of the child. A trial was had in the juvenile court in which the issues were found in favor of the respondent and judgment there entered to the effect that Morrow was not the father of Marjorie Jean.

The defendant in error contends here, and the trial court so held, that this proceeding in the juvenile court is res judicata as to the issue that Marjorie Jean is not the child of Morrow, deceased.

In a proceeding of the character involved here, the juvenile court has jurisdiction to determine parentage. This jurisdiction is not only conferred by necessary implication under our juvenile delinquency statute, but also by clear legislative intent as appears from section 650, C. L. 1921 (C. S. A. '35, c. 33, §50), which provides: "This article shall be liberally construed * * * for the purpose of the protection of the child from neglect or omission of parental duty toward the child by its parents, * * *." *Dikeou v. People*, 95 Colo. 537, 38 P. (2d) 772. In *Commonwealth v. Ellis*, 160 Mass. 165, 35 N. E. 773, where the defendant was charged with failing to support a minor child and denied its parentage, it was held that the record of a prior conviction and sentence of the defendant under the same statute for neglecting to support the same child was conclusive evidence that the paternity of the child was determined and that the defendant was estopped to set up the illegitimacy of the child as a defense.

A proceeding of this kind is in the direct interest of the child and the status of the child as to its parentage determined in such a proceeding, in our opinion, is just as conclusive and binding upon it as it would be upon a parent brought into court under the provisions of the statute.

The plaintiff in error contends that the judgment of the juvenile court should not be conclusive upon Marjorie Jean for the reason that no guardian represented her there. The appointment of a guardian in a proceeding of this nature is not required by our law, since in such a case under section 650, supra, the child involved is deemed to be a ward of the state and the juvenile court is given all chancery powers to protect its interest. The general rule on this subject is well stated in Freeman on Judgments (5th ed.), vol. 2, p. 1894, §900, as follows: "Adjudications of personal status are, under proper circumstances, res judicata as to such status when it again comes in question with reference to a different subject matter or in a

different cause of action. This is true as to infancy, heirship, marriage and divorce, and other relations. Where personal status is necessarily involved in an action, as where the action is predicated upon its existence or nonexistence, the judgment necessarily adjudicates the status which is essential to sustain it.''

In the proceeding in the juvenile court the determination of the parentage of Marjorie Jean was the paramount issue and this case is thus distinguished from cases of the character of *Sorensen v. Sorensen*, 68 Neb. 483, 490, 500, 94 N. W. 540, 98 N. W. 837, 100 N. W. 930, 103 N. W. 455, where it was held the finding of no marriage on application of an alleged widow for letters of administration was not conclusive on the son of the deceased and alleged widow in his application for distribution. In such cases the determination of the status in question was merely incidental to the proceeding and is not an adjudication in rem and is binding only on those who may be deemed parties or privies. The status of the mother of Marjorie Jean or of her purported marriage to Morrow was not an issue in the juvenile court proceeding, and to establish the bar of that judgment no question of privity or relationship between the mother and daughter arises in the case before us, as that judgment finally determined the status of the *daughter* which is the issue here.

 We also believe that Marjorie Jean would be precluded from inheriting Samuel H. Morrow's property for another reason. To entitle her to so inherit it would not only be necessary that she establish the fact that she is a child of Morrow, but also in addition she must show that at some time Morrow and her mother were lawfully intermarried and that after such marriage she was recognized by Morrow as his child. *Valdez v. Shaw*, 100 Colo. 101, 66 P. (2d) 325.

 It is our conclusion that the course of action taken by, and the conduct of, the mother of Marjorie Jean during the time she was associated with Morrow,

and since, have been such that it would be impossible to establish the fact of their marriage. From the facts heretofore stated by us and the additional circumstances which we now mention, it would seem utterly inconceivable that Morrow and Marjorie Jean's mother were ever joined in wedlock by contract or by common-law marriage. For instance, in all of her business dealings with Morrow, as has been mentioned, she used the name ''Morse'' and this practice continued during the time of their purported illicit relationship and thereafter. In neither of the proceedings in the juvenile court did she contend that she and Morrow were married or that Marjorie Jean was born in lawful wedlock and according to the findings of the juvenile court testified that the reason she dismissed the first petition was because of the intervening promise of Morrow to marry her. This alleged promise, of course, was made long after she now claims the marriage was consummated by contract and cohabitation. It may further be observed that practically the entire period of the alleged intimacy between her and Morrow was during the time that the marriage relationship existed between Morse and herself and, of course, during this period no common-law marriage relationship could arise. *Valdez v. Shaw, supra.* Her conduct in the proceeding before us is also utterly inconsistent with the status claimed for Marjorie Jean in that upon at least two occasions in either original or amended petitions for determination of heirship the mother asserted, under oath, that she was the widow and sole and only heir at law of Samuel H. Morrow, deceased, and made no mention whatever of any right of heirship being in her daughter Marjorie Jean. In the case at bar the defendants in error made no objection to her telling her full story and there was thus before the trial court evidence with reference to the relationship between herself and Morrow which would be inadmissible in an ordinary proceeding, yet with all of this testimony it was definitely found and determined by the trial court, as did the county

court, that no marriage ever existed. We believe this is the inevitable conclusion that any court or jury would arrive at in connection with this essential element in Marjorie Jean's right to inherit.

It is further contended that the court erred in permitting Elizabeth Morrow Barger to testify. This witness, a sister of the deceased and thus a collateral heir, was called as an adverse witness by Ruth Margaret Morrow. No objection was made by the administrator, who was a party to the proceeding, nor by the plaintiff in error when the witness took the stand or during her direct examination. Upon cross-examination counsel for "Winifred Imogene Morrow" attempted to show by the witness, but the fact was not established, that an agreement had been entered into between Ruth Margaret Morrow and the brothers and sisters of Morrow whereby in consideration of their recognizing Ruth Margaret Morrow as Morrow's sole heir at law, the brothers and sisters would be entitled to some pecuniary benefit out of the estate. At this point counsel for "Winifred Imogene Morrow" and for the plaintiff in error moved to strike the testimony of the witness, claiming that she was disqualified under section 6556, C. L. 1921, as an interested party. This motion was overruled and counsel for Ruth Margaret Morrow immediately offered the written stipulation relating to the arrangement, which was then filed and examined by the court and counsel. This stipulation, as we have mentioned, has not been transmitted to this court and we are unable to say whether or not it contained anything which would disqualify the witness under the provisions of the statute mentioned. After the stipulation was presented the trial continued without further objection or additional motion to strike this testimony or the pressing of the offer of proof on the subject of interest upon which the court had made no ruling. Under this state of the record it is, therefore, impossible for us to pass upon this question. We may say, however, that we do not believe the testimony of the witness, which related

largely to the relationship between Morrow and Jessie Younker Morrow, was essential to establishing their common-law marriage nor definitely prejudicial to Marjorie Jean who had the burden of proving her own alleged status as an independent case.

The judgment of the district court is, therefore, affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HOLLAND concur.