## ETHEL CAIN LADD AND ANOTHER v. ERNEST MARTINEAU.[1]

April 14, 1939.

No. 31,873.

[1]Reported in 285 N. W. 281.

130

*Sasse, French & Dunnette,* for appellant.
*Catherwood, Hughes & Alderson,* for respondents.

GALLAGHER, CHIEF JUSTICE.

Defendant, Ernest Martineau, appeals from a judgment of a district court of this state requiring him to pay to plaintiff I. S. Linson, clerk of the district court of Rolette county, North Dakota, the sum of $1,885.65 in trust for plaintiff Ethel Cain Ladd for the purposes set forth in the judgment and directing contempt proceedings as provided in 1 Mason Minn. St. 1927, § 3265, upon failure to pay the same within ten days after service of a copy of the judgment upon him.

The suit was upon a foreign judgment bearing date August 28, 1924, rendered and docketed in the district court of Rolette county in an action in which the state of North Dakota was plaintiff and the above named Ernest Martineau was defendant. It adjudged Martineau to be the father of an illegitimate child born to one Ethel Cain (now Ethel Cain Ladd) on or about June 5, 1923, and required him to pay for the support of said child the sum of $10 per month on the 15th day of each month for a period of six years commencing July 15, 1924, and thereafter $12.50 per month for a period of ten years or until the child attain the age of 16 years. The payments were to cease in case of its death. It further provided that the payments be made to the clerk of the district court of Rolette county for the use of Ethel Cain, the mother. The present action was instituted to recover accrued amounts due under this judgment aggregating $1,720 and interest thereon. In addition to the heretofore mentioned facts, the trial court found that the North Dakota

judgment has never been appealed from or modified, is still in full force and effect, and that no payments of money therein ordered to be paid by defendant have been paid; that defendant is a resident of Mower county, Minnesota; that Ethel Cain Ladd is a resident of North Dakota; that the child of whom defendant was adjudged the father is still alive, is not yet 16 years old, and is in the custody of the mother; that I. S. Linson is the duly appointed, qualified, and acting clerk of the district court of Rolette county, North Dakota, and brings this action in that capacity; that neither the child, in question nor her mother is a resident of Minnesota and that neither is likely to become a charge of the state of Minnesota or any governmental subdivision thereof.

As conclusions of law the court found that all payments under the North Dakota judgment which accrued up to and including the payment due February 15, 1927, were barred by the statute of limitations at the time the present action was commenced; that plaintiff was entitled to judgment against defendant for the total sum of each payment under said judgment beginning with the payment due March 15, 1927, and extending to and including the payment due February 15, 1937, together with interest on each of the unpaid installments from the time of its accrual at the rate of six per cent per annum together with plaintiff's costs and disbursements; that said judgment be held in trust for the benefit of plaintiff Ladd by the plaintiff Linson as clerk of the district court of Rolette county and by his successors in office; that the judgment be docketed against defendant and that it order him to pay the money judgment and if defendant fail to do so within ten days after a copy of the judgment is served upon him he may be dealt with as for contempt as provided in 1 Mason Minn. St. 1927, § 3265. Judgment was entered in accordance with the conclusions.

Thereafter, on motion by the defendant to amend and for vacation of judgment, certain evidence was admitted to the record whereby it is indicated that under the North Dakota law applicable to this case a defendant once imprisoned for failure to pay a judgment rendered against him in illegitimacy proceedings and subse-

quently released after having taken a pauper's oath is forever exempt from imprisonment for failure to pay the same judgment; and that the defendant in this action had been so imprisoned and released.

Appellant contends on this appeal that the trial court erred (1) In finding, since the North Dakota judgment was not final, that it was entitled to "full faith and credit"; (2) in failing to find that the entire judgment was barred by the statute of limitations; and (3) in providing for contempt proceedings in the event the judgment was not paid.

■ The question of the extent to which the "full faith and credit" clause of the federal constitution, U. S. Const. art. IV, § 1, should be applied was considered by this court in Holton v. Holton, 153 Minn. 346, 190 N. W. 542, 544, 41 A. L. R. 1415. That case involved an action brought in a court of this state to recover upon a judgment of a sister state entered for unpaid alimony due under a divorce decree of the latter. The trial court concluded that the judgment was entitled to full faith and credit and awarded judgment in plaintiff's favor. On appeal from an order denying a new trial defendant's principal contention was that the judgment of the sister state was not a final judgment entitled to full faith and credit in the courts of this state. This court affirmed the order, saying [153 Minn. 351]:

"* * * we hold that so long as the judgment is absolute in its terms and remains unmodified, or at least until an application for modification has been made, it is final as to instalments of alimony which have accrued. Sound public policy forbids the adoption of a rule which would permit a husband to escape his obligation to support his wife or infant children by crossing a state line. It has been well said that the courts should follow a course which will tend to unify the remedial agencies of the country by making them enforceable in all its parts. It would be a reproach to our system of legal administration if one could escape from the operation of a judicial decree by going into another state, for this is one country and so far as possible it should have one law."

The judgment in the instant case was absolute in its terms; no application for modification had been made. Under the rule of the Holton case we must regard it as final.

Restatement, Conflict of Laws, § 443, provides:

"A valid foreign judgment for the payment of money which has been obtained in favor of a state, a state agency, or a private person, on a cause of action created by the law of the foreign state as a method of furthering its own governmental interests will not be enforced."

While the parties have not considered this phase of the problem, we think it not improper to state that the general rule which this section embodies does not apply to the instant case. Rather does it come within the exception to this rule which is stated in subd. (c) of the same section:

"The rule stated in this Section does not apply to alimentary claims in a sister state. If a final judgment for the payment of money is given in favor of a private person on such a claim the judgment can be enforced in another state.
"*Illustration:*

"3. By a court in state X, A is declared the father of an illegitimate child, and is ordered to pay $10 a week to the child for its support. The mother sues A in state Y, in the name of the child, for the amount due and unpaid. Judgment will be given in her favor."

*Cf.* Milwaukee County v. M. E. White Co. 296 U. S. 268, 56 S. Ct. 229, 80 L. ed. 220.

■ Appellant's next contention is premised on 2 Mason Minn. St. 1927, § 9190, which provides that "no action shall be maintained upon a judgment or decree * * * of any state or territory * * * unless begun within ten years after the entry of such judgment." It is reasoned that since the judgment sued on was entered more than ten years prior to the time this action was brought the statute of limitations bars recovery in any amount. The trial court properly treated each installment separately and

rendered judgment for those which fell due within ten years prior to the commencement of the suit.

To accept the contentions of appellant would be to attribute to the legislature an intent to curtail the power of the courts to render judgments payable in installments by making the judgment a nullity, in effect, insofar as it directed a payment at a time later than ten years after judgment was entered. This position is unreasonable and will not be accepted. See McGill v. McGill, 101 Kan. 324, 166 P. 501; DeUprey v. DeUprey, 23 Cal. 352; Simonton v. Simonton, 33 Idaho, 255, 193 P. 386; Buell v. Duchesne Merc. Co. 64 Utah, 391, 231 P. 123; Will of Burghardt, 165 Wis. 312, 162 N. W. 317. The cases cited by the appellant (Gaines v. Grunewald, 102 Minn. 245, 113 N. W. 450; County of Blue Earth v. Williams, 196 Minn. 501, 265 N. W. 329) do not involve judgments payable in installments.

■ The theory of appellant's final contention is that since defendant could not be imprisoned in North Dakota for failure to pay the original judgment he cannot be imprisoned for failure to pay the judgment of a court of this state. This reasoning is answered by Restatement, Conflict of Laws, § 590, which provides:

"The law of the forum determines the methods of securing obedience to the court both with respect to proceedings in the court and with respect to the enforcement of a judgment."

Professor Beale, commenting on this section in his *Conflict of Laws,* Vol. 3, p. 1604, § 590.1, says:

"General considerations of administrative convenience make it apparent that the law of the forum will determine the methods by which the court may compel obedience of its orders. The problem has arisen in connection with arrest for debt. It is uniformly held that the question whether or not the debtor is subject to bodily arrest is determined exclusively by the law of the forum, irrespective of where the claim may have arisen."

The real question to be determined is whether by the law of this state the trial court properly included the contempt provision in its judgment.

We are of the opinion that a judgment obtained in a competent court of this state for payments due under a judgment entered by a competent court of a sister state under the illegitimacy statutes of the latter may be enforced, when so ordered by our court, by the same means as if the judgment has been originally obtained in this state and under our laws. The duty of a father to support his minor child has been fully recognized by our legislature. Failure by a person having legal responsibility for the care and support of a child to make proper provision for discharge of this responsibility is a misdemeanor. 2 Mason Minn. St. 1927, § 10136. The statute does not limit the obligation to cases where the responsibility is fixed by our law.

Under our illegitimacy statutes it is provided that a person adjudged to be the father of a child—

"* * * shall be subject to all the obligations for the care, maintenance and education of such child, and to all the penalties for failure to perform the same, which are or shall be imposed by law upon the father of a legitimate child of like age and capacity";

that judgment for amounts requisite to fulfill this obligation may be entered against him; and—

"If the defendant fails to comply * * * he may be summarily dealt with as for contempt of court, and shall likewise be subject to all the penalties for failure to care for and support such child, which are or shall be imposed by law upon the father of a legitimate child of like age and capacity, and in case of such failure to abide any order of the court, the defendant shall be fully liable for the support of such child without reference to such order." 1 Mason Minn. St. 1927, § 3265.

The law further provides that:

"This chapter shall be liberally construed with a view to effecting its purpose, which is primarily to safeguard the interests of illegitimate children and secure for them the nearest possible approximation to the care, support and education that they would be entitled to receive if born of lawful marriage, which purpose is

hereby acknowledged and declared to be the duty of the state; * * *." 1 Mason Minn. St. 1927, § 3272(d).

As stated by this court in State v. Jeffrey, 188 Minn. 476, 479, 247 N. W. 692, 693, the purpose of an illegitimacy proceeding is not to punish a person for begetting an illegitimate child. That was not a crime at common law, nor has it been made criminal by statute. Its purpose and object is to impose upon the father the duty to care and provide for the child, a duty which did not exist at common law. In State v. Jeffrey, *supra,* this court said [188 Minn. 479]:

"The statute imposes a natural and moral duty—a threefold duty:

"(1) The father's duty to the mother, to whom he owes more than gratitude, since by his conduct he has in a measure contributed to her social ostracism and the impairment of her earning power;

"(2) The father's duty to his own child; and

"(3) The father's duty to protect the public against the child's becoming a public charge."

In light of expressions of the legislature and this court respecting the obligation owed by a man to his illegitimate offspring, we can see no valid reason for limiting the power of our courts with respect to contempt orders to cases where the man is adjudicated to be the father and judgment is entered by them. From the standpoint of this court, the duty of a man to the mother and the child cannot be said to be fixed with reference to state boundaries. And when we recognize a judgment of a sister state in such a case as fixing the duty of the father, there seems no substantial reason for making the legal enforcement of that duty any less effective than if imposed by our own courts.

The position which we thus adopt is closely analogous to that taken by this court in the case of Ostrander v. Ostrander, 190 Minn. 547, 252 N. W. 449, 450, where it was held that a district court of this state has power to allow the extraordinary remedies provided by our statutes for the enforcement of alimony decrees to compel payment of a judgment for unpaid alimony obtained in this

state in an action based on an alimony decree of a sister state. In that case we said [190 Minn. 549]:

"We need not consider what the full faith and credit clause of the federal constitution * * * does or does not require. * * * Because of the nature of defendant's obligation and its origin, the enforcement of his duty is as much in need of attention by sovereign power as though he had remained in South Dakota. Transplantation of the parties from one state to another has not reduced the obligation to the ordinary category of 'a debt of record.' * * * Migration of the parties across a state line has wrought no change in the nature and basis of the obligation. Its purpose remains the payment of alimony needed for the support of a former wife and the child of herself and her debtor. To the ordinary mind, untroubled by legal nuances, the money due from defendant remains alimony wherever they or either may be. We prefer that nontechnical view which regards the substance of the matter as unchanged by mere removal of the debtor across a state line."

Therefore, since the question whether the provision for contempt was within the power of the district court is to be determined by the law of this state, and since the expressions of the legislature and this court are sufficient to lead us to the conclusion that contempt is as applicable in this case as if the judgment was originally obtained here, we conclude that there was no error in this respect.

Judgment affirmed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.