Sharon M. ENGELSON, Appellee,

v.

Robert MALLEA, Appellant.

No. 54107.

Supreme Court of Iowa.

Sept. 24, 1970.

Hanson & Bormann, Emmetsburg, for appellant.

Richard C. Turner, Atty. Gen., and Lorna L. Williams, Special Asst. Atty. Gen., and Roger A. Berkland, County Atty., Emmetsburg, for appellee.

UHLENHOPP, Justice.

The question before us is whether an illegitimate child in Minnesota is entitled to support under our uniform support law from respondent, who was previously adjudged in Minnesota to be the child's father.

At all times pertinent, petitioner Sharon M. Engelson, unmarried, resided in Minnesota. On August 21, 1966, she was delivered of a child, whom she named Shelley Marie Engelson. Apparently respondent Robert Mallea, whose true surname is Millea, presently resides in Palo Alto County, Iowa, with his wife and their child. His prior residence is not disclosed. /

Petitioner received public assistance in Minnesota. The State of Minnesota commenced a paternity action against Robert *Mallea*. Respondent, who was then counseling with his present attorneys, retained Minnesota attorneys in addition; participated in the Minnesota paternity action and had a jury trial; and, on May 26, 1967, was found to be the father of Shelley Marie. Accordingly on September 15, 1967, the District Court of Minnesota adjudged respondent to be the father and ordered him to pay petitioner's confinement expenses and $10 per week for Shelley Marie's support until 21 or further order.

Respondent did not make the payments. Evidently he was present in Iowa at and after rendition of the judgment. On November 13, 1967, petitioner filed a petition in the Minnesota District Court against Robert *Mallea* under the Minnesota version of the uniform support law, asking support for Shelley Marie from September 15, 1967, forward. After a hearing, the Minnesota District Court found that respondent was believed to be in Palo Alto County, Iowa, that he had been previously adjudged to be the father of the child and required to support her, and that he had failed to do so. The proceeding was transferred to the Iowa District Court in Palo Alto County.

The documents were filed in Palo Alto County, and notice was personally served on respondent under the name Robert *Mallea*. He specially appeared on the ground that his true surname is *Millea*. The special appearance was overruled. Respondent then answered, denying petitioner's allegations and averring lack of jurisdiction in the Minnesota and Iowa courts over Robert *Millea* and also absence of any duty to support an illegitimate child.

At trial in Palo Alto County, petitioner introduced in evidence the documents from Minnesota, including the judgment in the previous paternity action. Respondent did not object to this evidence. He took the stand; showed his correct name is *Millea,* the amounts of his income and living expenses, and the number of his present dependents; and admitted on cross-examination that he had appeared and participated in the Minnesota paternity action.

The trial court found it had jurisdiction of respondent, that he was adjudged in Minnesota to be the father of the child, and that he should pay $10 per week for the child's support during minority or until further order. Respondent appeals.

A number of prickly legal problems appear, but we confine ourselves to respondent's points, which are three: (1) The Minnesota and Iowa courts did not have jurisdiction of respondent because of the mistake in his name; (2) respondent is not liable in an Iowa uniform support proceeding for support of an illegitimate child; and (3) respondent is in no event liable for the child's support beyond her seventeenth birthday.

I. *Misnomer.* Unquestionably, respondent's surname is Millea. Unquestionably also, he is the same individual who defended the Minnesota paternity action and was found to be the father of the child. The case is not one of mistaken identity; rather, the question is whether the mistake in spelling was fatal as a matter of procedure.

■ Is the Minnesota paternity judgment valid? Respondent appeared in that action and defended, although sued as Mallea. True, in the present trial no evidence was introduced as to the effect of such an appearance and defense under Minnesota law. See Restatement, Conflict of Laws, § 621. But in such circumstances we presume the Minnesota law to be the same as the Iowa law. Pfeffer v. Corey, 211 Iowa 203, 233 N.W. 126. Under Iowa law, a party who is sued under a misspelled name and yet who appears and defends waives the defect. Rules 66, 104(a), Rules of Civil Procedure. Such is the rule generally. 6 C.J.S. Appearances § 17 at p. 54 ("A general appearance waives a misnomer in the process"). The Minnesota paternity judgment is not invalid for misnomer.

Did the Iowa District Court acquire jurisdiction of respondent in the present proceeding? Respondent's name was misspelled in this proceeding too, and he did not waive the defect; he specially appeared.

■ Misnomers in constructive notice cases and in actual notice cases must be distinguished. As this court stated in Thornily v. Prentice, 121 Iowa 89, 93–94, 96 N.W. 728, 729:

"Now, it may be conceded for the purposes of this case that, if this notice had been personally served upon appellee, or if he actually appeared in response to such service, a confusion or mistake in the name by which he was designated would not necessarily be fatal to the judgment, and that in the present proceeding his identity with the person sued could be established by parol evidence; but where reliance is had upon the constructive notice given by publication or by substituted service * * * greater strictness must be observed."

When the service is personal, the principle is stated thus in Shields v. Heinold, 253 Iowa 898, 901, 114 N.W.2d 302, 303:

"Where the real defendant is identifiable from the record before the court, or where it appears that the real defendant has actually been personally served, some variation in the name or error in an initial is not fatal."

In applying this principle, the practice is to compare the true name with the name used to see how material the variation is and whether the two names sound substantially the same, and this is done not only in original notice cases but in other proceedings as well. Fletcher v. Conly, 2 G. Greene 88 (Conly and Conolly—*idem sonans* applied); Houston v. State, 4 G. Greene 437 (Kimberling and Kamberling —not a fatal defect); McCash v. Penrod, 131 Iowa 631, 109 N.W. 180 (Carney instead of Karney—not fatal); State v. McClelland, 152 Iowa 704, 133 N.W. 111 (Bryarly and Byerly—not fatal); Richardson v. King, 157 Iowa 287, 135 N.W. 640 (Lother and Luther—not fatal); Kraft v. Bahr, 256 Iowa 822, 128 N.W.2d 261 (Edwin Bahr and Edward Bahr—not fatal).

■ Respondent defended a prior action in which he was misnamed Mallea. In the present proceeding he was personally served and misnamed the same way. The variance is not substantial: Mallea for Millea. We conclude that the special appearance was properly overruled.

II. *Illegitimacy.* Respondent says next that he cannot be required to support an illegitimate child. The contention at this point is not that respondent is not the father of the child. Rather, it is that a father cannot be required, in an Iowa uniform support proceeding, to support an illegitimate child. The contention raises two legal questions: what law governs, and what is the duty of support under the governing law?

On the first of these questions, some background on the Iowa uniform support law is necessary—chapter 252A, Code, 1966. See generally, Brockelbank, The Problem of Family Support: A New Uniform Act Offers a Solution, 37 A.B.A.J. 93; Annotation, 42 A.L.R.2d 768.

Due to the mobility of people and the existence of 50 sovereign states, a simple, speedy, and inexpensive remedy is needed by a dependent in one state to secure support from a person in another state. In 1948 a New York legislative committee drafted the Uniform Support of Dependents Act. The salient characteristic of the act is that it not only provides a remedy but also contains substantive duties to support (in § 3). In 1949 the main portions of the act were adopted in Iowa. 53 G.A. ch. 103.

█ In 1950 the Commissioners on Uniform State Laws promulgated the Uniform Reciprocal Enforcement of Support Act (amended by the Commissioners in 1952 and 1958). 9C Uniform laws Annotated, 2 (1957); 38–40 (1967 pocket part). This act provides a remedy, but leaves the substantive duties to support to the other laws of the states (in § 7). In 1955 Iowa amended its Uniform Support of Dependents Act by adding substantial portions of the Uniform Reciprocal Enforcement of Support Act, including § 7. 56 G.A. ch. 129 (see especially § 1). Our duty is to reconcile the various portions of our uniform support law, as thus amended, and to endeavor to carry out the beneficent purpose of that law as a whole. Boomhower v. Cerro Gordo County Board of Adjustment, 163 N.W.2d 75 (Iowa).

Section 7 of the Commissioners' act, found in Code, 1966, § 252A.3(8), provides:

"Duties of support applicable under this chapter are those imposed or imposable under the laws of any state where the respondent was present during the period for which support is sought. The respondent is presumed to have been present in the responding state during the period for which support is sought until otherwise shown."

█ This section is essentially a conflict of laws rule—it specifies the law governing the duty to support. Under this sec-

tion, courts hold the duty to support is that imposed by the law of the state where the respondent was during the period for which support is sought. As stated in Daly v. Daly, 21 N.J. 599, 608, 123 A.2d 3, 8, "The appellant here was present at all times in the State of New Jersey; therefore it is the law of this State which is applied on the question of support for the children." Similarly, in Rosenberg v. Rosenberg, 152 Me. 161, 163, 125 A.2d 863, 864, "The laws which govern in a situation such as this, are those of the responding state (Maine) and not the laws of the initiating state (New York)." Other decisions so holding are Howze v. Howze, 225 A.2d 477 (App. D.C.), app. dism. 128 U.S.App.D.C. 204, 385 F.2d 986 (D.C.Cir.) (illegitimate child); Clarke v. Blackburn, 151 So.2d 325 (Fla.App.) (same); Wheeler v. Wheeler, 196 Kan. 697, 414 P.2d 1; M v. W, 352 Mass. 704, 227 N.E.2d 469 (illegitimate child); Brown v. Thomas, 221 Tenn. 319, 426 S.W.2d 496 (same); Neff v. Johnson, 391 S.W.2d 760 (Tex.Civ.App.).

█ In the case at bar, support is sought for the period after September 15, 1967. Section 252A.3(8) contains a presumption that a respondent was present in the responding state during the period for which support is asked, and the contrary has not been established here. Consequently, the law which governs respondent's duty to support is the Iowa law.

█ What is the duty to support under Iowa law? This inquiry raises a further question, *what* Iowa law—the law in our uniform support act only, or that law and the other Iowa law as well? Section 252A.3(8) says the applicable duties are those imposed under "the laws" of the state in which respondent was present. Also, § 252A.8 provides, "This chapter shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter." In a

proceeding under the uniform support act, this court has imposed duties to support under other Iowa law, and not just the duties specified by that act. Davis v. Davis, 246 Iowa 262, 67 N.W.2d 566. We conclude that the Iowa duties to support under § 252A.3(8) are those imposed by Iowa law generally, including § 252A.3(1) to (7).

What then are the Iowa support duties of the father of an illegitimate child? We must of course look to the statutes, for no duty to support existed at common law. 10 C.J.S. Bastards § 18 at p. 86; 10 Am.Jur. 2d, Bastards, § 68 at 895. Our uniform support law itself does not expressly include or exclude illegitimate children. See the definition of "child" in § 252A.2(3); and Op. Iowa Atty.Gen., 185 (1968). Our poor laws require a putative father to support an illegitimate child at the behest of public authorities, but the present proceeding is not under those laws. Code, 1966, §§ 252.3, 252.6, 252.12. We turn to chapter 675 of our Code, dealing with illegitimate children.

The Commissioners on Uniform State Laws worked in this area as well, and in 1922 promulgated the Uniform Illegitimacy Act. 9 Uniform Laws Annotated, 390 (1942). That act has two main purposes —to establish a basic duty to support, and to provide a remedy. Bell, Proposed Changes in Our Illegitimate Laws, 1 Miss. L.Rev. 77; Note, 24 Col.L.Rev. 909.

In 1925 our legislature adopted the main parts of the Uniform Illegitimacy Act, including the portion establishing the basic duty to support. 41 G.A. ch. 81, § 1. Section 675.1 of our statutes thus reverses the common law rule so far as fathers are concerned:

"The parents of a child born out of wedlock and not legitimized (in this chapter referred to as 'the child') owe the child necessary maintenance, education, and support. They are also liable for the child's funeral expenses. The father is also liable to pay the expense of the mother's preg-

nancy and confinement. The obligation of the parent to support the child under the laws for the support of poor relatives applies to children born out of wedlock."

The legislature went farther and provided that the remedy in the act is not the exclusive method of enforcing the duty to support. Section 675.7 provides:

"Proceedings to establish paternity and to compel support by the father may be brought in accordance with the provisions of this chapter. They shall not be exclusive of other proceedings that may be available on principles of law and equity."

With the duty to support made clear by statute, the only question in a given case is factual—is the repondent the father? Under § 675.7, the remedy in chapter 675 is not the exclusive method of resolving that question.

■ In the instant situation, a prior paternity action was prosecuted in Minnesota, and respondent was adjudged the father. The only objection respondent makes to that judgment is misnomer, which is untenable. That determination of parentage is res judicata in the state where the judgment was rendered. In re Morrow's Estate, 100 Colo. 424, 68 P.2d 36; Richardson's Adm'r v. Borders, 246 Ky. 303, 54 S. W.2d 676; Montville v. Hamblin, 96 N.H. 356, 77 A.2d 113; Commonwealth ex rel. Nedzwecky v. Nedzwecky, 203 Pa.Super. 179, 199 A.2d 490. That determination is res judicata in Iowa too, for the judgment is entitled to full faith and credit. State of Indiana ex rel. Stone v. Helmer, 21 Iowa 370; Peterson v. Paoli, 44 So.2d 639 (Fla.); Ladd v. Martineau, 205 Minn. 129, 285 N.W. 281; Bjorgo v. Bjorgo, 402 S. W.2d 143 (Tex.). Moreover, our statute requires us to recognize such a judgment. Code, 1966, § 675.34.

■ We conclude that Iowa law governs respondent's duty to support; such law requires a father to support his illegitimate offspring; and in this proceeding, re-

spondent's parentage has been established by prior judgment.

III. *Duration of Duty.* Iowa law within and without the uniform support act governs respondent's duty to support, and the "duty to support" includes the duration of that duty. Neff v. Johnson, 391 S.W.2d 760 (Tex.Civ.App.). Respondent says Iowa law does not compel him to support beyond the child's seventeenth birthday.

Reconciliation of statutes is again necessary. At the inception of our statehood, the legislature adopted the poor laws and included a putative father within the definition of "father". But the legislature did not specify the duration of the required support. Code, 1851, §§ 787, 788. Those statutes remain to this day. Code, 1966, §§ 252.2, 252.3.

In 1925, the legislature adopted the substance of the Uniform Illegitimacy Act, as already noted. One section which was adopted, pertaining to the remedy, provides that judgment in a paternity action shall require support "until the child reaches the age of sixteen years." 41 G.A. ch. 81, § 23, now Code, 1966, § 675.25.

Then in 1949 the legislature enacted the uniform support law, providing that the term "child" means "a child actually or apparently under seventeen years of age, and a child over seventeen years of age who is unable to maintain himself and is likely to become a public charge." Code, 1966, § 252A.2(3).

We need not now determine the age to which a father can be compelled to support an illegitimate child under the poor laws or under the paternity act. But we hold that in this proceeding under the uniform support law, § 252A.2(3) should be applied; support should be ordered to age 17; and jurisdiction should be reserved to order support thereafter if the child appears at that time unable to support himself and likely to become a public charge. This interpretation accords with legislative intent.

Modified and affirmed.

All Justices concur.